This is Judge Bianco. I'm joined this afternoon by my colleagues Judge Jacobs and Judge Park. There's one case on the afternoon calendar today. It's United States v. Felton. And as the attorneys know, this had been on the calendar a few months ago. And then we granted the motion for appointment of new counsel and then wanted to give Mr. McLaughlin some time to familiarize himself with the case and prepare for the argument. So we're ready to proceed today. Mr. McLaughlin, go ahead. Thank you, Your Honor. And again, representing Mr. James Felton, from our perspective, Your Honor, as indicated in the briefing, there was constitutional error not to ask the jurors during voir dire the racial prejudice questions, including the implicit racial bias questions requested by Mr. Felton. Implicit racial bias, Your Honors, is a real thing. And we need to figure out how to address it because it's a real obstacle to fair trial. And here, in this context, to having an impartial and unbiased jury. Our position, Your Honors, is that where you have a black defendant charged with a violent crime and the defendant requests voir dire on implicit racial bias, the Constitution requires it and should require it. In terms of the... Sorry. Am I speaking over somebody? Sorry. Okay. Keep going. Okay. I apologize. So the foundational issue is, in reviewing the literature, and I'll probably say this more than once, I can't claim to be a Ph.D. on the subject in any way, shape, or form, but I think we should with the proposition that there is no dispute that implicit racial bias related to black men and violence exists in the legal system. The DOJ training materials and the literature seem to overwhelmingly support that. And it's a powerful force, implicit racial bias. It impacts decision making. And what should be done about it? Here, what we were asking and basing our appeal on is that during voir dire, jurors, again, if requested by the defendant, should be questioned about implicit racial bias. There are obviously other things that can be done, set forth in the literature, including jury instructions and jury orientation. But one critical aspect of supplying a jury that is fair and impartial and is able to guard against the implicit racial biases that many of us have is the voir dire process and having it specifically addressed as requested by Mr. Felton's attorneys below. This is Judge Jacobs. Obviously, the issues you're raising involve very complex volatile sensitivities, which I think is your whole point. But is it for a trial judge to consider that raising the issue would surface the biases and sort of racialize the decision making? And therefore, whether the judge is correct or not, the judge would have a basis for deciding not to give that trial. There are many much better phrased terms of phrases that I'm going to be able to repeat back to you, Your Honor, in terms of when you have the rights of a black defendant on trial, the questions of whether it might be better to avoid the issue fall somewhat hollow on the shoulders of the black defendant who, having gauged the pluses and minuses, makes the request to go ahead and address the issue. And I think whether in Supreme Court precedent or from this court, et cetera, the notion that if the defendant gets to choose whether to run the risk that you just identified, it should lie with the that is the trigger for what we're asserting should be a constitutionally mandated inquiry. Mr. McLaughlin, just following up on Judge Jacobs, we've said in a case called Taylor, we do not minimize the importance to criminal defendants of removing the possibility of racial bias on the jury. But then we reemphasize how best to do that is primarily left to the broad discretion of the district court. And here, as you know, the district court, it wasn't as if there to the potential jurors about how race and bias cannot enter into their deliberations. And then twice, once in a very open-ended fashion, ask them whether they could follow that construction. So you want us to hold that even if you do that, it's a constitutional error to not also ask a question specifically about implicit bias. Is that what you would ask us to hold? The answer is yes, Your Honor. And let me address it on the implicit racial bias aspect first. I mean, we do have issues with how the judge asked the express racial bias question in this case, which I think are important to flag. But let's start with the implicit racial bias aspect of things. I mean, one of the primary differences between express racial bias and implicit racial bias is it appears to be innate in a number of us. And so the Supreme Court rules in this court's prior precedent in terms of trying to winnow through who has expressed prejudices. And is this case one that is racially charged enough that we do need a constitutional requirement for a voir dire on race? The difference with implicit racial bias is that because it's so broad sweeping, it does actually tend to lend itself to a categorical approach. And meaning educating the jurors on the fact that they have it, whether they want it or not, and teaching them, or at least alerting them to the notion that they need to guard against it, is purely a positive and frankly, nefarious trial of a black man charged with a crime of violence. Wouldn't this require us to overturn a Supreme Court precedent? The Supreme Court has said on more than one occasion that no particular question on race is required by the Constitution. A question on race is required under certain circumstances. And under their supervisory authority, they say a question on race should be asked anytime a defendant requested. But they have made clear that there's no particular question that is constitutionally required. So are you asking us to basically overturn Supreme Court precedent? We are. As conceded in the brief, we are, because we don't fit within the 50-year-old jurisprudence that tried to navigate express racial prejudice as opposed to implicit racial bias that we're talking about. And candidly, obviously, the best that we can realistically hope for from the court is we would if we could, but maybe we can't. And that may be a platform to go ahead and The government says a plain error applies here because there was no objection. I know you didn't offer the reply brief, but the reply brief sort of pushes back a little bit on that. But it seemed pretty clear from my review that there was no objection that when the district court indicated why he thought this question was not necessary in light of the other questions, the defense trial counsel said, that's fine. We trust, I don't have the exact quote in front of me, but we trust you handled the issue of prejudice fully or something along those lines. Isn't that plain error then? And your honor, in terms of how this case is resolved, I really, really, really hope that is not resolved on a plain error and creating bad law. One never tried to do that and being an appellant. My review of the Supreme Court decisions from Ham, Ford and from this court's if you go ahead and submit the request in your proposed voir dire and the judge declines to do that. I don't know what would happen if you were purely silent and the judge forgot that you had raised those issues. That might be one thing. But here, clearly that's not what happened. The judge was aware of the request by the defendant, made a decision that no, he wasn't going to do it in his reasoned fashion. And the whole purpose of plain error is if you have something that never made it to the attention of the district court, we're going to review it on plain error here. Clearly, it was an issue raised to the district court. The district court decided it and the notion that you need to renew your objection afterwards and say, no, really, we wish you would do it. Candidly, this issue was raised to the district court. The district court decided it and there's no requirement of renewing the objection. Your honor. Which case stands for that proposition? If you submit 50 questions for voir dire and the judge goes through them and pick some and not questions from both sides and comes up with a script that you don't have to object to what the judge, you know, what the judge comes up with in that context. I'm not aware of any case that says that you don't have to object. Once you submit questions, they're all preserved. And your honor, obviously I don't have the transcripts, but I'm looking at Ham versus South Carolina, which had the four questions that were proposed to the judge, the one, two, three, four, some having to do with race, some having to do with the beard. And the judge declined to do that. I didn't read that opinion as saying, then you need to ask again whether they could do it. I could see obviously a rule where if you submit 50, somehow things would get lost in the shuffle. But here, what would distinguish it from the hypothetical you put forward, your honor, is that there was an express discussion of that. The judge indicated that he was not going to ask questions about sociological, that would implicate sociological discussion. So I think in fairness, this issue was squarely raised and discussed. The judge understood the defendant's position, ruled against it by saying, I'm not going to do that. And the notion of renewed objection is one that is not in the jurisprudence. And I don't have my time, sorry. I did want to address the way the judge asked about racial prejudice and recognizing it's challenging to do in any WAD year. But I would point out that there's a lot of case precedent lamenting having those questions asked in a compound format where they don't ask, do you have a prejudice? They ask, if you do have a prejudice, could you overcome it? Here, what the judge ended up doing is kind of the worst way of addressing it, though he did address it, but he starts with an instruction that thou shall not, and then says, if by the way you happen to have, could you overcome it? And from our perspective, in terms of really trying to figure out the very difficult questions and whether there are racial biases in the jury, the one way to not do it is the way that the judge did it. If there are no further questions, so reserve my time for rebuttal. Yes, I see you have three minutes for rebuttal. Unless my colleagues have any other questions, we'll hear from Mr. Balsamillo. Go ahead, Mr. Balsamillo. Thank you, Your Honor. May it please the court, Frank Balsamillo for the United States, and I was counsel below on the trial and other pretrial proceedings in Mr. Felton's case. In this case, Judge Pauly did not abuse his discretion, much less commit plain error in statements about the need for jurors to serve without prejudice, racial or otherwise, and included any specific admonition and a question directed at bias based on race and other characteristics. Here, Felton claims that Judge Pauly's failure specifically to discuss unconscious or implicit racial bias amounted to structural constitutional error mandating reversal, and he's wrong, based on binding Supreme Court precedent. Under the Supreme Court's holdings, absent any racially sensitive issues in a case or any suggestion that the defendant's race is intertwined with the testimony or evidence, the Constitution does not, in fact, require any questioning about race at all, much less a searching inquiry about implicit racial bias, as Felton claims was required here. The Supreme Court has made clear that any questioning about bias, even explicit overt bias, is required, quote, only when there are more substantial indications of the likelihood of racial or ethnic prejudice affecting the jurors in a particular case. Here, Felton points to no way in which race was bound up in the facts or evidence of the case or any other indications that racial prejudice may have affected the jurors in their consideration of this case, and in fact, there were no racial components to the testimony or evidence in this matter. Felton instead attacks essentially the very premise of the Supreme Court's ruling that, quote, there is no constitutional presumption of juror bias for or against members of any particular racial or ethnic group. Indeed, his opening brief acknowledges, and it was acknowledged again here in argument, that this is a novel position and that in order to prevail, Felton would have to, quote, or he's asking this court to, quote, reconsider prior Supreme Court rulings. He takes no authority for the proposition that the court can do so. The government respectfully submits that it cannot. Unless the court has any additional questions, the government submits that the court should affirm the judgment below, and we rest on our brief. All right. Judge Park, do you have any questions? No, thank you. Judge Jacobs? None. All right. Mr. McLaughlin, you have three minutes in rebuttal. Go ahead. Thank you, Your Honor. Just briefly, coming back to your question about plain error, I was looking. Government counsel didn't give me enough time to look extensively, but I was looking at United States v. Laws 292 F. 3rd 123, one of the more detailed decisions by this court on what is required to be asked, and it does seem to fit the fact pattern here, wherein plain error is not the standard in that case. Similar to here, there are proposed questions. The district court declined to ask certain questions, and this court's review was not a plain error review. It was on the merits. So, again, after any further questions, I appreciate your time. Okay. Thank you, both. We appreciate your arguments today, and we will reserve decision. And I'll ask the clerk, Ms. Rodriguez, to adjourn court. Court stands adjourned.